# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK CRAMER, | : | CIVIL NO. 1:CV-07-0496 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| SECRETARY DEPARTMENT OF | : | |
| CORRECTIONS, et al., | : | |
| Respondents | | |

## MEMORANDUM

Derrick Cramer, an inmate currently confined at the State Correctional Institution at Huntingdon, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 16, 2007. (Doc. No. 1.) On April 5, 2007, the Court issued an order serving the petition, and directing that Respondents address the timeliness of Cramer's filing. (Doc. No. 6.) A response addressing the timeliness of the petition was submitted on May 8, 2007. (Doc. No. 10.) Cramer submitted a reply thereto. On May 21, 2007, the Court issued a Memorandum and Order dismissing Cramer's petition as untimely, and closing this case. (Doc. No. 12.) Thereafter, an appeal was filed with the Third Circuit Court of Appeals. (Doc. No. 13.) On April 21, 2011, the Third Circuit issued an opinion vacating this Court's decision of May 21, 2007, and remanding the case back to this Court for consideration of whether Petitioner is entitled to equitable tolling with respect to the filing of his federal habeas corpus petition. (Doc. No. 23.) Following the issuance of the mandate by the Third Circuit, the case was reopened in this Court on May 19, 2011. The parties have briefed the issue of equitable tolling (Doc. Nos. 32, 34 and 35), and the matter is now ripe for consideration. For the reasons that follow, the Court finds that equitable tolling is not warranted in this matter.

**I.      Factual Background**

On May 9, 2003, Cramer was convicted of First Degree murder following a jury trial in the York County Court of Common Pleas, Pennsylvania. He received a sentence of life in prison. On direct appeal to the Pennsylvania Superior Court, the conviction and sentence were affirmed on March 16, 2004. A timely petition for allowance of appeal was denied by the Pennsylvania Supreme Court on August 12, 2004.

On February 8, 2005, Cramer filed a counseled petition for post-conviction relief pursuant to Pennsylvania's Post-Conviction Relief Act. The petition was denied on June 13, 2005. An appeal to the Pennsylvania Superior Court was denied on March 29, 2006. Cramer states that due to a court error, his attorney did not receive notice of the Superior Court's denial until May 30, 2006, following the expiration of time for filing an appeal to the Pennsylvania Supreme Court. His attorney thereafter filed a petition for leave to file a petition for allowance of appeal outside of the thirty-day period or <u>nunc</u> <u>pro</u> <u>tunc</u>. The Supreme Court granted leave, and afforded Cramer until August 30, 2006 to file his appeal. On December 15, 2006, the petition for allowance of appeal was denied.

The pending petition for writ of habeas corpus pursuant to § 2254 was filed on March 16, 2007. This Court raised the statute of limitations issue <u>sua</u> <u>sponte</u>, and directed the parties to address whether the petition was timely under 28 U.S.C. § 2244(d)(1). Respondents maintained that the petition was untimely because it was not filed within one year of the date when the judgment became final. Cramer responded that the petition was timely because the statute was tolled during the pendency of his PCRA petition from February 8, 2005 until December 15, 2006.

After considering these arguments, this Court denied the habeas petition as untimely on

May 21, 2007. This decision was based on the following calculation. The statute of limitations ran from November 11, 2004, the date when Cramer had to file a petition for a writ of certiorari to the United States Supreme Court on direct appeal, until February 8, 2005, the date when Cramer filed his PCRA petition. This time period totaled approximately 88 days. The statute was found to be tolled from February 8, 2005 until March 29, 2006, the date on which the Superior Court denied Cramer's request for PCRA relief. Because Cramer's petition for allowance of appeal filed on August 30, 2006 was not filed within thirty days of the denial, this Court found that the statute of limitations began to run again on March 29, 2006, at which point Cramer had approximately 277 days remaining, or until early January 2007, to submit a timely habeas petition.[1] Because he did not file his petition here until March 16, 2007, he was approximately 2½ months late.

Cramer appealed this Court's order dismissing his petition as untimely, and filed an application for a certificate of appealability attaching exhibits. One of the exhibits included a copy of an order from the Pennsylvania Supreme Court dated July 31, 2006, granting him leave to file his petition for allowance of appeal <u>nunc</u> <u>pro</u> <u>tunc</u> within thirty (30) days of the order. Because it appeared from the record that this Court was unaware that an extension had been granted, the Third Circuit issued an order on January 11, 2008, granting Cramer's request for a certificate of appealability. The State was ordered to show cause why this Court's order dismissing the petition as untimely should not be summarily vacated, and the petition remanded

---

[1] The Court notes in hindsight that in calculating the limitations period, thirty (30) days should have been added on to March 29, 2006. This is the time period in which a petitioner has to file an appeal to the Pennsylvania Supreme Court from the denial of the PCRA petition by the Superior Court. However, even if thirty (30) days had been added, it would not have altered the Court's conclusion that the petition was untimely.

3

for consideration of any procedural or substantive issues other than the issue of timeliness. Because the State disputed the timeliness of the petition, the Third Circuit appointed counsel and scheduled briefing. Following the submission of briefs, the Third Circuit issued an opinion on April 21, 2011, finding that Cramer was not entitled to statutory tolling, but remanding the petition to this Court for consideration of whether he is entitled to equitable tolling. (Doc. No. 23.) The issue has been briefed, and the Court will now address the issue of equitable tolling in light of the facts of this case.

## II.     Standard for Equitable Tolling

Although claims may be untimely under 28 U.S.C. § 2244(d), the United States Supreme Court has held that § 2244(d) "is not jurisdictional" and does not set forth "an inflexible rule requiring dismissal . . . [whenever the] clock has run." Day v. McDonough, 547 U.S. 198, 205, 208 (2006). Rather, "§ 2244(d) is subject to equitable tolling in appropriate cases." Holland v. Florida, ___U.S. ___, 130 S. Ct. 2549, 2560 (2010).

In Pabon v. Mahanoy, 654 F.3d 385, 399-400 (3d Cir. 2011), the Third Circuit Court of Appeals set forth the standard for equitable tolling as follows:

> In determining whether equitable tolling should be granted, we address two questions: (1) whether the petitioner faced extraordinary circumstances that stood in the way of timely filing; and (2) whether he or she exercised reasonable diligence. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Pabon v. Superintendent S.C.I. Mahanoy, et al., 654 F.3d 385 (3d Cir. 2011). It is established that equitable tolling may be applied to the statutory limitations period set forth in the AEDPA. Holland v. Florida, 130 S. Ct. 2549, 2560 (2010)(footnote omitted).
>
> There are no bright lines in determining whether equitable tolling is warranted in a given case. Rather, the particular circumstances of each petitioner must be taken into account. Id. at 2563. As Holland explains, while prior decisions provide guidance, rigid reliance on precedent should be avoided. Id. In each case, there is a need for "flexibility," "avoiding mechanical rules," and

4

"awareness . . . that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Id. (internal citation and footnote omitted.) In sum, equitable tolling is appropriate when "principles of equity would make the rigid application of a limitation period unfair." Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998); see also LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir. 2005). However, courts need to be "sparing in their use of" the doctrine. Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).

Pabon, 654 F.3d at 399-400.

The Third Circuit recently reinforced these principles and confirmed that in meeting the extraordinary circumstances prong, a petitioner must show that he was prevented from asserting his rights in some extraordinary way. Munchinski v. Wilson, 694 F.3d 308, 329 (3d Cir. 2012). The Court also addressed the issue of when a habeas petitioner has demonstrated the "reasonable diligence" necessary to permit equitable tolling. Id. at 330-32. The Court stated as follows:

> The diligence requirement "does not demand a showing that the petitioner left no stone unturned." Ramos-Martinez v. United States, 638 F.3d 315, 324 (1st Cir. 2011). Rather, "[t]o determine if a petitioner has been [reasonably] diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011); see also Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)("Due diligence . . . require[s] reasonable diligence in the circumstances."). In other words, the diligence inquiry is fact-specific and depends on the circumstances faced by the particular petitioner; there are no bright line rules as to what conduct is insufficient to constitute reasonable diligence. If a petitioner "did what he reasonably thought was necessary to preserve his rights . . . based on information he received . . . , then he can hardly be faulted for not acting more 'diligently' than he did." Holmes v. Spencer, 685 F.3d 51, 65 (1st Cir. 2012).

Id. at 49-50. With these principles in mind the Court will consider the application of equitable tolling to the facts of the instant case.

### III. Equitable Tolling Analysis

Before engaging in the determination as to whether the doctrine of equitable tolling is applicable under the circumstances of this case, the Court must first address Cramer's persistent

5

urging that he is entitled to statutory tolling. This Court is without authority to consider this issue in that the Third Circuit Court of Appeals specifically found that the nunc pro tunc petition for allowance of appeal was not properly filed and, as such, that statutory tolling was inapplicable in this case. The Third Circuit found, however, that Cramer may be entitled to equitable tolling, and remanded the matter back to this Court for this sole purpose. Cramer did not pursue any further appeal with respect to the Third Circuit's decision that statutory tolling was inapplicable, and as such, this Court's inquiry is limited to the consideration of equitable tolling.

In deciding whether Cramer is entitled to equitable tolling this Court must conduct the following two-pronged inquiry: (1) whether some extraordinary circumstance stood in Cramer's way and prevented the timely filing of his federal habeas petition and (2) whether he diligently pursue his rights despite his circumstances. For the reasons that follow, we find under the specific facts of this case, equitable tolling is not warranted.

As set forth above, the deadline for filing his federal habeas corpus petition with this Court expired on approximately January 2, 2007.[2] The record before the Court reveals the following. After the denial of PCRA relief by the trial court on June 13, 2005, Cramer's PCRA counsel filed an appeal to the Pennsylvania Superior Court. Denial of PCRA relief was affirmed

---

[2] As discussed earlier, in calculating the relevant statutory period the parties failed to add thirty (30) days from March 29, 2006 (the date the Pennsylvania Superior Court decided Cramer's PCRA appeal) to file an appeal to the Pennsylvania Supreme Court. As such, the parties calculated Cramer's deadline for filing his federal habeas petition as early January 2007 (277 days from March 29, 2006). In reality, Cramer actually had until early February 2007 to file any federal habeas petition in this Court. See Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000)(The PCRA proceeding is deemed to be pending during the time a petitioner could have sought allowance of appeal from the Pennsylvania Supreme Court, even if no allowance is sought.); Rinaldi v. Gillis, 248 F. App'x 371 n.6 (3d Cir. 2007). Again, because adding the 30 days would not affect the outcome of this case and to avoid confusion, the Court will analyze with the dates provided by the parties.

by the Superior Court on March 29, 2006. Cramer has submitted records demonstrating that both he and his counsel were unaware of the Superior Court's decision at that time. PCRA counsel submits an affidavit stating that in late April of 2006, by happenstance during a conversation with the York County District Attorney's Office, he learned that he had not received decisions from the Pennsylvania Superior Court with respect to two (2) cases he had pending there.[3] (Doc. No. 32, Ex. C, Robinson Aff.) As a result, counsel states he wrote a letter to the Prothonotary of the Pennsylvania Superior Court on May 4, 2006, referencing the two cases, and expressing his concern based upon this information that he was not receiving decisions issued by the Superior Court. Counsel further requested that the Court confirm that there was no complication with respect to opinions being delivered to his office. (Id., Ex. A, Letter dated 5/4/06.) The printed letterhead stationary on which counsel wrote this letter to the Prothonotary contained the following reference: "Richard Robinson direct e-mail: rrobinson@mpl-law.com."

The Deputy Prothonotary in the Superior Court of Pennsylvania responded to PCRA counsel in a letter dated May 5, 2006. (Id., Ex. B.) In investigating why counsel was not informed of the decisions issued in the referenced cases (neither of which was Cramer's case), counsel was informed that the Prothonotary's Office was provided with the following e-mail address for counsel sometime between January 31, 2006 and February 21, 2006: rrobinson@mpl-law.com. It was believed that the notification of this e-mail address came pursuant to a phone call or a document received. This address was added to the Superior Court's database and all decisions were delivered to counsel via this e-mail address. After sending the decisions via this e-mail address, the Prothonotary's Office received delivery notification status messages indicating

---

[3] The decisions counsel had not received on this occasion were in two separate cases he had pending before the Superior Court, and unrelated to Cramer's case.

7

that the decisions had been received at this e-mail address. (Id. at 1-2.)

In the affidavit submitted by PCRA counsel, he further states that he did not become aware of the Superior Court's March 29, 2006 decision affirming the denial of PCRA relief in Cramer's appeal until May 30, 2006. (Doc. No. 32, Ex. C, ¶ 2.) The following day, counsel wrote a letter to Cramer informing him of the decision. He also advised him of the circumstances leading up to his discovery that a decision had been issued in his case, beginning with his initial discovery in April of 2006 that he had not received decisions from the Superior Court in two unrelated cases. Counsel explained the "mistake" by stating that the Superior Court at some point began sending the decisions by way of e-mail, and that he had never requested notification by e-mail. In his affidavit he also states that he personally does not utilize a computer in his office, and that all e-mail transmissions in his office go through his secretary's email address. (Id., Ex. D, Letter dated 6/1/06.) Counsel further informed Cramer that because he was unaware of the Superior Court's decision with respect to his PCRA appeal on March 29, 2006, and did not discover it until May 30, 2006, it was now outside the thirty (30) day time frame for appealing the decision to the Pennsylvania Supreme Court. Counsel advised Cramer that he would immediately file a petition with the Supreme Court of Pennsylvania requesting to file a petition for allowance of appeal nunc pro tunc. (Id.) While the record does not specify if the request to file a nunc pro tunc appeal was filed with the Supreme Court on that same day, it does reveal that the Supreme Court granted the request. The petition for allowance of appeal was ultimately denied on December 15, 2006.

The instant federal habeas corpus petition was filed on March 16, 2007. This Court raised the statute of limitations issue sua sponte and directed the parties to address the timeliness of the

petition under 28 U.S.C. § 2244(d)(1).

As previously set forth in this Memorandum, the Third Circuit Court of Appeals found that because the Pennsylvania Supreme Court denied Cramer's nunc pro tunc petition without discussion, they were required to presume it did so on timeliness grounds. The Third Circuit further found that Cramer had not alleged facts sufficient to overcome any such presumption and, as such, the nunc pro tunc petition for allowance of appeal was not "properly filed" and had no tolling effect with respect to the running of the statute of limitations in this case. The statute of limitations clock therefore began to run on March 29, 2006, making the instant federal petition for writ of habeas corpus untimely absent the application of equitable tolling. (Doc. No. 23, 4/21/11 Opinion.)

The foregoing facts establish that the Superior Court rendered a decision with respect to Cramer's appeal of his PCRA on March 29, 2006. There is also no dispute that Cramer's counsel did not become aware of the decision until some time after that point. Counsel states that it was not until May 30, 2006, when he learned of the decision. However, the facts in the record establish that at least one month earlier, in late April of 2006, he became aware that he was not receiving decisions from the Superior Court with respect to matters he had pending there. While this discovery was with respect to two unrelated cases counsel had on appeal and had nothing to do with Cramer, it still alerted counsel to the fact that he was not receiving notification of decisions rendered by the Superior Court. When counsel thereafter notified the Prothonotary in the Superior Court about the matter, he was advised that the email address of rrobinson@mpl-law.com had been provided to the court, and that all notification of decisions had been sent to that email address. The record supports the fact that this is counsel's email address in that it appears

9

on the top of his letterhead stationary, the same stationary he used to compose his letter to the Prothonotary on May 4, 2006.

Although the Prothonotary advised counsel on May 5, 2006, that notification of any decisions in his cases were being sent to his direct email address, counsel states that he did not discover the March 29, 2006 Superior Court decision in Cramer's case until May 30, 2006. He does not explain why it took until then to do so, knowing since late April that he was not receiving decisions in his cases.[4] A reasonably diligent attorney would have checked the status of all outstanding cases before the Superior Court upon knowledge that he was not receiving decisions.

With this said, the Court finds that counsel's failure to receive notification of the March 29, 2006 decision, for whatever reason, does not rise to the extraordinary circumstance required for equitable tolling. Even assuming counsel did not learn of the decision until May 30, 2006, the statute of limitations in this action for the filing of a federal habeas petition in this Court did not expire until early January of 2007. While counsel decided to file a request with the Pennsylvania Supreme Court seeking permission to file a nunc pro tunc appeal, such was not necessary in order to exhaust his PCRA claims. Instead, counsel could have filed a timely federal habeas petition in this Court. Instead, he chose to gamble by pursuing a petition for allowance of appeal nunc pro tunc hoping that the Pennsylvania Supreme Court would grant allocatur or at least issue a reason for denying allocatur other than procedural default. Unfortunately, this is not what occurred. The Supreme Court denied allocatur perfunctorily without discussion, and the Third Circuit Court

---

[4] The Court notes that even if counsel learned of Cramer's decision in late April as opposed to May 30, 2006, the time within which to appeal to the Pennsylvania Supreme Court from the Superior Court's March 29, 2006 decision would have still been expired.

10

of Appeals has found that Cramer failed to overcome the application of this presumption. As a result, the nunc pro tunc petition for allowance of appeal was not "properly filed," and the remaining time for purposes of the statute of limitations began to run on March 29, 2006, the date the Superior Court issued its decision. Any federal habeas petition was due in this Court by early January of 2007.

Cramer maintains that the "extraordinary circumstance" that prevented him from filing a timely habeas corpus petition in this Court was the Superior Court's failure to notify counsel of the March 29, 2006 decision. The Court finds that this occurrence was not extraordinary and did not prevent the timely filing of a habeas petition for the reasons stated above. At the time both counsel and Cramer learned of the March 29, 2006 decision, there remained over seven (7) months within which to submit a timely federal habeas petition. The fact that counsel pursued the path of a nunc pro tunc appeal to the Pennsylvania Supreme Court does not change this fact. An appeal to the Supreme Court from the denial of collateral relief by the Superior Court is unnecessary and not required for purposes of exhaustion. See In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration (Pa. May 9, 2000); Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004). Further, a timely habeas petition could have been filed in this Court prior to expiration of the statute of limitations while the nunc pro tunc petition for allocatur was pending in the Pennsylvania Supreme Court, and a stay of the proceedings in this Court requested pending completion of the state proceedings.

It is well-established that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes, have not been found to rise to the "'extraordinary' circumstances required for equitable tolling." LaCava v. Kyler, 398 F.3d 271, 275 (3d Cir.

2005)(citing Merritt v. Blaine, 326 F.3d 157, 169 (3d Cir. 2003). Moreover, a "petitioner's lack of understanding or knowledge of the law is not an appropriate basis to invoke equitable tolling." Jones v. Morton, 195 F.3d 153, 160 (3d Cir. 1999)(equitable tolling not applicable to time-barred petition due to petitioner's misunderstanding of AEDPA).

While the Supreme Court in Holland held that an attorney's gross negligence can constitute grounds for equitable tolling under the proper circumstances, this occurs in situations where the petitioner demonstrates due diligence despite his attorney's conduct. Holland, 130 S. Ct. at 2564-65. In the instant action, Cramer has not alleged circumstances indicating that he exercised reasonable diligence in pursuing his federal habeas petition under the circumstances he faced. In fact, the only action he took evidenced in the record is that he sought clarification of the Pennsylvania Supreme Court's order denying allocatur. However, he did not even do this until some time in late July of 2011, over four (4) years following the expiration of the statute of limitations and the filing of this action. (Doc. No. 32, Ex. F.) For these reasons, the Court finds that equitable tolling is not warranted.

## IV.     Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, (2003). "When the

12

district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will issue. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK CRAMER,** | : | CIVIL NO. 1:CV-07-0496 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **SECRETARY DEPARTMENT OF** | : | |
| **CORRECTIONS, et al.,** | : | |
| Respondents | | |

# ORDER

**AND NOW THIS 7th DAY OF DECEMBER, 2012,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The petition for writ of habeas corpus is not subject to equitable tolling and is **dismissed as untimely.**

2. Petitioner's motion to amend/correct the habeas petition (Doc. No. 39) is **denied as moot**.

3. There is no basis for the issuance of a certificate of appealability.

4. The Clerk of Court is directed to **close this case**.

                               S/ Yvette Kane
                               YVETTE KANE, Chief Judge
                               Middle District of Pennsylvania